UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| SCHYLA PONDEXTER-MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-3706 (RBW) |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The plaintiff, Schyla Pondexter-Moore, brings this civil action against the District of Columbia Housing Authority (the "DCHA"), the District of Columbia Housing Authority Police Department (the "DCHAPD"), the District of Columbia (the "District"), the Metropolitan Police Department (the "MPD"),[1] and Highland Residential LP (collectively, the "defendants"),[2] alleging violations of the Fourth Amendment to the Constitution, see Complaint ("Compl.") ¶¶ 152–90, ECF No. 1, District of Columbia common law, see id. ¶¶ 191–204, the Fifth and Fourteenth Amendments to the Constitution, see id. ¶¶ 205–26, and the First Amendment to the Constitution, see id. ¶¶ 227–36. Currently pending before the Court is the remaining component

---

[1] At a hearing on this motion to dismiss, the Court dismissed the case as to the MPD, see Order at 1 (Jan. 30, 2025), ECF No. 54, because the plaintiff conceded that the MPD cannot be sued in its own capacity, stating she "agrees that the MPD may be dismissed from this case as an independent [d]efendant" because 'it is well settled that the MPD is non sui juris[.]'" Pl.'s Opp'n at 8 (alterations in original) (citations omitted); see Hunt v. District of Columbia, 2002 WL 1997987, at *1 (D.C. Cir. Aug. 29, 2002) (per curium) ("The district court correctly concluded that [the] Metropolitan Police Department is non sui juris.").

[2] Defendants DHCA, DCHAPD, and Highland Residential LP have a separate motion to dismiss pending before the Court. See Defendants District of Columbia Housing Authority and Highland Residential LP's Memorandum in Support of Motion to Dismiss, ECF No. 27-1. This motion will be addressed at a later date in a separate Memorandum Opinion.

of the District's motion to dismiss the plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See Defendant's Motion to Dismiss ("Defs.' Mot.") at i, ECF No. 19.  Upon careful consideration of the parties' submissions,[3] the Court concludes for the following reasons that it must grant the District's motion to dismiss.

## I. BACKGROUND

### A. Factual Background

The following allegations are derived from the plaintiff's Complaint, unless otherwise specified.  The plaintiff is "an African American resident of the District of Columbia . . . [and] a [ ] public housing resident of Highland Dwellings . . . during the relevant time period of the [Complaint]."  Compl. ¶¶ 4–5.  The DCHA "owns and operates at least 8,000 apartments and townhomes at fifty-two public housing properties, including Highland Dwellings."  Id. ¶ 7.  The "DCHA either directly operates or contracts with a third-party management company to operate these properties."  Id.

Beginning around August 2017, "[the DCHA] began [authorizing] [the] installati[on of] security cameras . . . at Highland Dwellings."  Id. ¶ 17.  On November 9, 2017, the plaintiff received a notice that "a camera company would enter her home to install security cameras on November 16, 2017."  Id. ¶ 18.  "On November 16, 2017, the camera installation company, acting on behalf of [the] [ ] DCHA, arrived at [the plaintiff]'s home, and she refused to provide access to her upstairs bedroom."  Id. ¶ 22.  "Following this first notice, and for several months thereafter, [the] DCHA made multiple attempts to install a camera on [the plaintiff]'s home and a power box in her bedroom, while refusing to respond to [the plaintiff]'s repeated requests for

---

[3] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Memorandum in Opposition to Defendants District of Columbia and Metropolitan Police Department's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 21, and (2) the defendants' Reply in Further Support of District Defendants' Motion to Dismiss Plaintiff's Complaint ("Defs.' Reply"), ECF No. 22.

basic information about the cameras' capabilities and purpose." Id. ¶ 19. "On or about January 28, 2018, [the] DCHA and H[ighland] R[esidential LP] began installing the power boxes for the camera outside of [the plaintiff]'s property without her knowledge or consent." Id. ¶ 28. And, "on January 31, 2018, [the] [DCHA and Highland Residential LP] again came to [her] home to install the cameras[.]" Id. ¶ 32. The plaintiff "explained to the worker that . . . [she] did not want the cameras installed until after she had communicated with [the] DCHA and Highland Residential LP." Id. Despite the plaintiff's opposition, "[the DCHA and Highland Residential LP] installed the camera and related equipment . . . [in the plaintiff]'s home." Id. ¶ 51.

The plaintiff further alleges that "the majority of the public housing complex is visible and monitored by the security cameras[,]" id. ¶ 59, and that "there are approximately eighty security cameras located within Highland Dwellings[,]" id. ¶ 52. The plaintiff represents that "the cameras are part of a surveillance network across public housing complexes and are used to monitor everyday activities of residents." Id. at 13. And, with "approximately one camera for every two-and-a-half Highland Dwellings homes[,]" id. ¶ 58, the plaintiff asserts that "[t]he large number of cameras in such a small area creates a level of surveillance that is highly offensive in a residential context where residents are carrying out their personal daily routines, including, among other things: sleeping, eating, raising their children, gathering, and bathing[,]" Id. ¶ 63.

The plaintiff alleges that "at a minimum, the cameras have a 1280 x 720p high-definition resolution, they can auto-focus and zoom up to an estimated seventy feet, and they have infrared capabilities (i.e., 'night vision') that allow the cameras to capture clear videos at night." Id. ¶ 65. As a result of their "advanced remote-focus capabilities," id. ¶ 67, the plaintiff states that "the security cameras clearly capture a view of the front entrance of [the plaintiff]'s . . . home[,]" id. ¶ 71, and that they "can render footage from within [the plaintiff]'s apartment unless her

windows are covered[,]" id. ¶ 72.  At bottom, the plaintiff represents that the "cameras' constant surveillance, high-quality images, and advanced technological features enable the[ defendants] to capture intimate details about [her] life and movements that would otherwise remain private information."  Id. ¶ 68.

The plaintiff further alleges that the "DCHA has a 'Command Center[,]'" id. ¶ 78, which "features a console controlling twelve 55-inch monitors streaming live images from 650 cameras[,]" id. ¶ 81.  The "Center's video system stores data for at least thirty days and can play back the older footage stored in the system."  Id. ¶ 82.  The plaintiff states that the "DCHA uses its vast camera network to constantly surveil residents," id. ¶ 77, and that "[a]t a minimum, [the] DCHA's video surveillance system can map [her] every movement within and near Highland Dwellings[,]" id. ¶ 74.

Relevant to the pending motion to dismiss, the plaintiff states that "Highland Dwellings is one of many DCHA properties that makes remote, electronic access to its high-definition security camera footage available to [the] MPD without requiring a warrant."  Id. ¶ 95 (footnote omitted).  Specifically, the plaintiff represents that the "DCHA has over 4,000 cameras connected via a web-based system that [the] MPD has constant access to[,]" id. ¶ 94, which "gives [the] MPD the ability to remotely engage both CCTV and DCHA security cameras to have almost complete, and potentially overlapping, security camera footage of Highland Dwellings area and the movements and activities of Highland Dwellings residents[,]" id. ¶ 106.

The plaintiff further alleges that this system is part of a broader practice of cooperation between the DCHA and the MPD.  Specifically, the plaintiff alleges that the "DCHAPD [ ] regularly works alongside [the] MPD to patrol and assist in their investigations[,]" id. ¶ 91, and the "MPD [ ] provides information and assistance to [the] DCHA[]" via a Memorandum of

4

Understanding "giv[ing the] DCHA access to [the] MPD's Criminal Justice Information System, which contains data from multiple federal and local criminal justice agencies[,]" id. ¶ 91 n.19.  In regards to Highland Dwellings, the plaintiff alleges that the "DCHA provides [the] MPD . . . with information regarding all high-definition security cameras located on its properties, including the invoices, brand, serial numbers, and specific locations for each camera."  Id. ¶ 93.  According to the plaintiff, the "[DCHA] staff stationed at headquarters monitor housing complexes and alert [the] MPD and [the] DCHAPD if they view activity such as loitering or street gambling."  Id. ¶ 88.  Along with the DCHA staff, the plaintiff states that "Highland Dwellings property manager Lori Baker informed [her] that [the] DCHAPD, [the] MPD, and other unspecified individuals would be watching the footage from the cameras[,]" id. ¶ 95, and that the "MPD disseminates camera footage from Highland Dwellings on YouTube, where it can be viewed by the public[,]" id. ¶ 108 (footnote omitted).  As a result, the plaintiff represents that "[e]nabling Highland Dwellings' security cameras in tandem with [the] MPD's CCTV network likely allows [the d]efendants to collect intimate details and/or otherwise private information" about her.  Id. ¶ 107.

**B.     Procedural Background**

On December 12, 2022, the plaintiff filed her Complaint in this case.  See id. at 1.  On April 14, 2023, the District filed its motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  See Defs.' Mot. at 1.  On May 12, 2023, the plaintiff filed her motion in opposition, see Pl.'s Opp'n at 1, and the District filed its reply in support of its motion to dismiss on May 26, 2023, see Defs.' Reply at 20.  As indicated above, on January 30, 2025, the Court held a hearing on the motion to dismiss and held in abeyance resolution of her claims against the District, which this Memorandum Opinion now resolves.  See Order at 1 (Jan. 30, 2025), ECF No. 54.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

"Federal district courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "it is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Nurse v. Sec'y of Air Force, 231 F. Supp. 2d 323, 326 (D.D.C. 2002) (Walton, J.) (citations omitted).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . .

6

will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted). And, the Court "need not accept bare legal conclusions nor unsupported inferences." Campaign Legal Ctr. v. Fed. Election Comm'n, No. 22-cv-3319 (CRC), 2024 WL 4263853, at *5 (D.D.C. Sept. 23, 2024) (citing Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).

### III.    ANALYSIS

The District argues that the Court should dismiss the plaintiff's Complaint pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As discussed infra, the Court need only evaluate the motion under Rule 12(b)(1). In this regard, the District argues that plaintiff "has failed to demonstrate a basis for Article III standing because she has not identified a cognizable injury caused by the District . . . or redressable by judicial decree directed at [the] District. . . ." Defs.' Reply at 1. Additionally, the District argues that "[the p]laintiff's Complaint fails . . . to state a claim" because "[she] repeatedly points to allegations in the Complaint showing that the District could surveil her in some way that would violate her legal rights, but that is not the same as alleging that the District has in fact acted unlawfully." Id. In response, the plaintiff argues that she "has Article III standing to bring her claims against the [District]" because "[she] has adequately alleged that her injuries are (A) fairly traceable to the [District], and (B) redressable by this Court." Pl.'s Opp'n at 5.

The Court will address all of the plaintiff's claims collectively because as a threshold matter, she must establish standing to invoke the jurisdiction of an Article III court and pursue any of her claims. The Supreme Court has indicated that

> when a plaintiff's standing is brought into issue[,] the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself

7

> [or herself] that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be . . . inconsistent with the Art. III limitation.

Simon v. E. Ky. Welfare Org., 426 U.S. 26, 38 (1976)); see also Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) ("[A] showing of standing 'is an essential and unchanging' predicate to any exercise of [federal] jurisdiction.") (en banc) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Accordingly, the Court will consider whether the plaintiff has established that she has Article III standing to pursue any of her claims against the District.

**A.     Whether the Plaintiff Has Established that She Has Article III Standing to Bring Her Claims Against the District**

"As the party invoking federal jurisdiction, the plaintiff[] bear[s] the burden of demonstrating that [she] ha[s] standing." TransUnion LLC v. Ramirez, 594 U.S. 413, 430–31 (2021). "Moreover, the plaintiff must demonstrate standing with respect to each claim and form of relief sought." Am. Freedom L. Ctr. v. Obama, 106 F. Supp. 3d 104, 108 (D.D.C. 2015) (Walton, J.) (citing Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 153 (2010)). To satisfy the standing requirement under Article III, "a litigant seeking to invoke the jurisdiction of a federal court must demonstrate that (1) [she] has suffered an injury-in-fact (2) which is caused by, or is fairly traceable to, the defendant's alleged unlawful conduct and (3) which is likely to be redressed by a favorable decision of the court." Wyo. Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 48 (D.C. Cir. 1999) (citing Lujan, 504 U.S. at 560). "The absence of any one of these three elements[—injury-in-fact, causation, or redressability—]defeats standing." Newdow v. Roberts, 603 F.3d 1002, 1010 (D.C. Cir. 2010). The Court will address causation first. Because the Court ultimately finds that the plaintiff has not plausibly alleged that her purported injuries were "caused by, or is fairly traceable to, the [District's] alleged unlawful conduct[,]"

8

Wyo. Outdoor Council, 165 F.3d at 48, the Court need not conclusively determine whether the plaintiff has established an injury-in-fact, or whether any such injury-in-fact would be redressable by a favorable decision by the Court, see Newdow, 603 F.3d at 1010, and must dismiss the case, see Lujan, 504 U.S. at 560 (emphasizing that standing is an "essential and unchanging" predicate to Article III jurisdiction).

1.  **Whether the Plaintiff Has Established Causation**

The District argues that the plaintiff has failed to establish causation because she "makes no factual allegation suggesting that the District or [the] MPD were involved in the installation or operation of the cameras and thus cannot show that injuries related to the presence of the cameras are fairly traceable to the District or [the] MPD." Defs.' Mot. at 7. In response, the plaintiff argues that she has established that her injuries "are directly traceable to [the District] through [the] MPD's monitoring of the camera footage." Pl.'s Opp'n at 6. But, in reply, the defendant District argues that while the plaintiff "contends that [the] MPD's 'monitoring of the footage caused her injuries, [ ] [she] has not alleged that [the] MPD has ever monitored or accessed any footage of her, her home, or her movements." Defs.' Reply at 2. The District argues that although the plaintiff "points to allegations in her Complaint that [the] MPD can access [the] DCHA's footage and that a Highland Dwellings employee stated at some unspecified time and in some unspecified context that [the] MPD was one entity among several that could access the DCHA camera footage[,]" id., "[t]he only example [the p]laintiff provided of [the] MPD interacting with any DCHA camera footage is [the] MPD posting a video of a suspected assault with a deadly weapon online, which [the p]laintiff does not allege contained any footage of her home[,]" id., and that this "after-the-fact dissemination of footage of a suspected crime by [the] MPD does not give rise to an inference that [the] MPD is monitoring

9

[the] DCHA's cameras—let alone that [the] MPD has ever monitored any camera footage concerning [the p]laintiff, [her] home, or [her] movements[,]" id.

To satisfy causation, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant . . .'" Lujan, 504 U.S. at 560–61 (alterations in original) (quoting Simon, 426 U.S. at 41–42). "To be fairly traceable, there must be a 'causal connection between the assertedly unlawful conduct and the alleged injury.'" Doe 1 v. Apple Inc., 96 F.4th 403, 409 (D.C. Cir. 2024) (quoting Allen v. Wright, 468 U.S. 737, 753 n.19 (1984)). In addition, "[t]he chain of causation may not be 'attenuated,'" id., "nor can [the injury] 'result [ ] from the independent action of some third party not before the court,'" id. (alterations in original) (quoting Simon, 426 U.S. at 42).

Upon review of the parties' submissions in this case, and consideration of the arguments they advanced during the hearing on the motion, the Court concurs with the District that the plaintiff has failed to establish causation. As an initial matter, it is clear to the Court that the plaintiff does not allege that her purported injuries caused by the District arise from the actual installation and operation of the camera system; to the contrary, the plaintiff argues that she has suffered a distinct injury-in-fact from the MPD's "monitoring" of the camera system. See Pl.'s Opp'n at 6. Therefore, the question at this stage of the case is—"assum[ing] the truth of all material factual allegations in [her] [C]omplaint and 'constru[ing] the [C]omplaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[,]" Am. Nat'l Ins. Co., 642 F.3d at 1139 (quoting Thomas, 394 F.3d at 972)—whether the plaintiff has established that the MPD monitors the camera system and that its monitoring of that system has caused her purported injuries.

To reiterate, the plaintiff contends that she has carried her burden to show causation by pleading sufficient factual allegations to at least raise the inference that her purported injuries are caused by the District's conduct because "[the] DCHA provides the [ ] MPD [ ] unbridled access to the footage from these cameras.  [The] MPD then surveils [the p]laintiff directly."  Pl.'s Opp'n at 1.  In support of her position, the plaintiff offers the following factual allegations:

- The "DCHAPD [ ] regularly works alongside [the] MPD to patrol and assist in their investigations[,]" Compl. ¶ 91;

- The "MPD [ ] provides information and assistance to [the] DCHA[]" via a Memorandum of Understanding "giv[ing the] DCHA access to [the] MPD's Criminal Justice Information System, which contains data from multiple federal and local criminal justice agencies[,]" id. ¶ 91 n.19;

- The "DCHA has over 4,000 cameras connected via a web-based system that [the] MPD has constant access to[,]" id. ¶ 94, based on a statement from the DCHA's Executive Director that the MPD "do[es] have access to the camera system.  Since this is web-based, if they so choose, they can have access and be able to utilize the system as they see fit.  So there is that cooperation between the two entities[—i.e., the DCHA and the MPD,]" D.C. Hous. Auth. Bd. of Comm'rs Meeting at 33 (Dec. 9, 2020) (cited at Compl. ¶ 94).

- "Highland Dwellings property manager Lori Baker informed [the plaintiff] that the DCHAPD, [the] MPD, and other unspecified individuals would be watching the footage from the cameras[,]" Compl. ¶ 96; and

- The "MPD disseminates camera footage from Highland Dwellings on YouTube, where it can be viewed by the public, when it is investigating suspected criminal

11

activity[,]" id. ¶ 108; see id. ¶ 108 n.24 (referencing a single MPD YouTube video from September 28, 2018).

However, even when considering these factual allegations together, the Court concludes for several reasons that the plaintiff's allegations as to the District are insufficient to carry her burden to establish subject matter jurisdiction because the purported harm, if any, is too attenuated for the Court to infer that the MPD has been "surveil[ing] [her] directly[,]" Pl.'s Opp'n at 1, by "monitoring" the camera system, id. at 6. First, the plaintiff's factual allegations regarding general cooperation between the DCHA and the MPD, see Compl. ¶ 91, are too attenuated to support an inference that such cooperation extended to the MPD independently and actively monitoring the DCHA's camera systems. Second, the existence of a Memorandum of Understanding allowing the DCHA to access a MPD data system, see id. ¶ 91 n.19, does not support the inverse inference that the MPD has not only accessed but actively monitored the DCHA's systems. Third, although the Highland Dwellings property manager allegedly told the plaintiff that the MPD "would" be watching the camera system, id. ¶ 96, the DCHA Executive Director's representations clearly indicate that while the MPD had access to the system, they did not necessarily actively monitor that system, see D.C. Hous. Auth. Bd. of Comm'rs Meeting at 33 (noting that "if they so choose, they can have access and be able to utilize the system as they see fit[]") (emphasis added). To be clear, these factual allegations raise an inference that the MPD had some form of access to the camera system, but access to a system—i.e., the ability to make use of the system—is not the same as the veritable use of the system to directly surveil the plaintiff. Moreover, to conclude anything more is nothing other than rank speculation. And, fourth, the plaintiff's representation regarding the MPD's dissemination of camera footage—in a single instance in 2018, as part of an investigation into suspected criminal activity unrelated to

the plaintiff, see Compl. ¶ 108—does not provide the missing link supporting an inference that the MPD monitors the camera system, let alone monitoring the plaintiff through use of that camera system. Elsewhere in the Complaint, the plaintiff alleges that DCHA staff "preemptively monitors" the footage, id. ¶ 87, and will "alert [the] MPD and [the] DCHAPD if they view activity such as loitering or street gambling[,]" id. ¶ 88. However, the plaintiff has provided no support for the inference that the MPD has used its purported access to the camera system to monitor the plaintiff, and the indication that DCHA staff alert the MPD of activities based on their own review appears to cut against any inference that the MPD independently monitors such footage. Therefore, even when considered collectively, these factual allegations do not support an inference that the MPD monitors and directly surveils the plaintiff using the camera system. See Campaign Legal Ctr., 2024 WL 4263853, at *5 (noting that the Court "need not accept bare legal conclusions nor unsupported inferences[]" in assessing whether a plaintiff has established that the Court has subject matter jurisdiction) (citing Browning, 292 F.3d at 242).

      Thus, "without more" to support the inference that the MPD does in fact "surveil[] [the p]laintiff directly[,]" see Pl.'s Opp'n at 1, the plaintiff has failed to demonstrate "a causal connection between the [District's] assertedly unlawful conduct and [her] alleged injury[,]" Doe 1, 96 F.4th at 409 (citation omitted). And, because the plaintiff has not sufficiently shown that her injury was "caused by, or is fairly traceable to, the [District's] alleged unlawful conduct[,]" Wyo. Outdoor Council, 165 F.3d at 48, the plaintiff has not met her burden of establishing that she has Article III standing. See TransUnion, 594 U.S. at 430–31 ("[T]he plaintiffs bear the burden of demonstrating that they have standing."); Newdow, 603 F.3d at 1010 ("The absence of any one of these three elements[—injury-in-fact, causation, or

redressability—]defeats standing."). Therefore, the Court must dismiss without prejudice the plaintiff's claims against the District.

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendants' motion to dismiss as to the District of Columbia and dismiss the plaintiff's claims without prejudice for lack of subject matter jurisdiction.

**SO ORDERED** this 7th day of March, 2025.[4]

REGGIE B. WALTON  
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.